# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KATRINA MICHAELIS,** ) | |
| ) | |
| **Plaintiff,** ) | CIVIL ACTION |
| ) | |
| v. ) | No. 05-2351-KHV |
| ) | |
| **DELUXE FINANCIAL SERVICES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Katrina Michaelis filed suit against her former employer, Deluxe Financial Services, Inc. ("Deluxe"). Plaintiff alleges that Deluxe terminated her employment in retaliation for her appeal of the decision of the employee benefits plan administrator to deny disability benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. This matter is before the Court on a bench trial. The Court finds that Deluxe is entitled to judgment and makes the following findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## Findings Of Fact

From September 27, 1993 through April 1, 2005, defendant employed plaintiff as a machine operator at its imprint plant in Kansas City, Kansas. Plaintiff's functional manager was Randy White, who reported to Steve Oshinski, assistant operations manager. Oshinski reported to Dan Schwartz, plant operations manager. Chris Gajewski was Human Resources ("HR") manager of the Kansas City facility.

At Deluxe, plaintiff was eligible to participate in a short-term disability plan which The Hartford Comprehensive Employee Benefit Service Company ("Hartford") administered. In the spring of 2004, plaintiff

began experiencing a number of health problems. Hartford approved a series of claims for disability benefits for plaintiff from June 30 through October 8, 2004.

On October 5, 2004, plaintiff called White and updated him on her medical status. Plaintiff told White that her family physician had not released her to work until November 8, 2004. White told other management employees that plaintiff would remain off work through November 8. Sometime during October or November, Lisa Lauver, who assisted Gajewski on HR matters, called Hartford to check on the status of plaintiff's claim.

On November 2, 2004, after plaintiff went to her physician, she informed White that her physician had not released her to work until November 29, 2004. Plaintiff returned to work on November 29, 2004. That day, Lauver called the supervisor of Deluxe accounts at Hartford to expedite the review of plaintiff's claim. Lauver told plaintiff that Hartford still had not received information from her doctor on her most recent claim.

On December 3, 2004, Gajewski and Lauver met with plaintiff to discuss her benefits claim. They explained that Hartford still had not received information from her physician supporting her extended leave from October 9 through November 28. They advised plaintiff that if Hartford ultimately denied her benefits claim for that period, she would be assigned attendance incidents under Deluxe absenteeism policy, and would be required to pay 100 per cent of her medical insurance premiums (i.e. both the employer and employee portion) for that period of unapproved leave.[1]

After the meeting with plaintiff, Gajewski followed up with Hartford and determined that it had received additional documentation from plaintiff's physician that afternoon. Later that day, Gajewski told plaintiff that

---

[1] Around November of 2004, Lauver informed at least one other employee that because Hartford had denied her claim for short-term disability, Deluxe would assess attendance incidents under its absenteeism policy.

2

Hartford had received some additional documentation from her physician. Gajewski also told plaintiff that she would contact the Deluxe corporate benefits department to request that it work with Hartford to expedite her claim. Plaintiff contacted Gajewski that evening to discuss in more detail her obligation to pay insurance premiums if Hartford denied her claim.

On December 9, 2004, Hartford notified plaintiff and Deluxe that it had denied plaintiff's claim for benefits from October 9 through November 28, but that she could appeal the decision. On December 17, Gajewski told plaintiff that she owed 100 per cent of her medical insurance premiums (i.e. both the employer and employee contributions). For the period for which Hartford denied benefits, plaintiff's obligation totaled $1,700.00. Gajewski offered to help plaintiff draft a letter to Hartford to ask for information necessary to appeal the denial of benefits. Gajewski met with plaintiff and later drafted such a letter. In late December, Gajewski gave the draft to White who then gave it to plaintiff. Plaintiff thanked White for providing the letter. White reminded plaintiff that because Hartford had denied her claim for the seven-week period, Deluxe would assess seven attendance incidents for the seven weeks off work and place her on formal warning.[2] White explained that if Hartford reversed its decision, Deluxe would remove the incidents from her record. White told plaintiff that he had been unable to enter the incidents in the computer system, but that he would try to do so within the week and that he would give her the formal warning at that time. Plaintiff told White that she did not believe she should accrue incidents for her time off work. Plaintiff also expressed dissatisfaction with the manner in which Deluxe had informed her of her responsibility for insurance premiums. White offered to help

---

[2] Deluxe attempts to follow a progressive discipline policy which generally includes the following steps: (1) coaching by an employee's immediate supervisor; (2) a formal warning; (3) a final warning and (4) termination of employment.

plaintiff in any way that he was able and stated that it was his hope that Hartford would respond favorably to her appeal.

By letter dated January 4, 2005, plaintiff asked Hartford for information to pursue her appeal. Plaintiff's letter tracked the draft prepared by Gajewski. Plaintiff did not inform anyone at Deluxe that she had sent the letter to Hartford.

During the first week of January 2005, plaintiff accumulated two more attendance incidents. On January 12, Gajewski and White met with plaintiff and gave her a final warning because she had received 9.5 attendance incidents in a 12-month period.[3] Gajewski and White explained that while under final warning, plaintiff would be ineligible for pay increases, promotions and drawings, but that if Hartford reversed its decision, Deluxe would remove the incidents from her record. White further explained that unless she accrued additional incidents, Deluxe would take her off warning status on November 1, 2005 -- or sooner if Hartford reversed its decision. Plaintiff indicated that she understood, but she did not sign the final warning document. Plaintiff asked to review her personnel file and requested a copy of the final warning document. Gajewski told plaintiff that she would check to see whether she could provide a copy of the warning, but that she could meet plaintiff the next day to review her file. Gajewski reminded plaintiff that she needed to re-pay Deluxe for her insurance premiums for the period in which Hartford denied benefits. Plaintiff indicated that she was not going to do so until her appeal was resolved.

---

[3] Seven of the attendance incidents were from plaintiff's seven weeks off from October 9 through November 28. Under the absenteeism policy, an employee who accrued six attendance incidents in a rolling 12-month period received a formal written warning; an employee who accrued eight attendance incidents in a 12-month period received a final written warning; and an employee who accrued ten attendance incidents in a 12-month period was subject to further discipline, up to and including termination.

4

Later that same afternoon, plaintiff met with Lauver, Oshinski and White to review her personnel file. Plaintiff felt intimidated because Deluxe had three people present. Other than their presence in the room, however, the three management employees did nothing to make plaintiff feel intimidated. Lauver told plaintiff that if she had questions, she could ask Gajewski. Plaintiff asked for the most current report of attendance incidents. Lauver explained that such information was available on line. White told plaintiff that he would get that information for her. Plaintiff also asked about documentation summarizing her meeting with White and Gajewski that morning. White explained that he was in the process of documenting that meeting and would add the documentation to her file once he was finished.

On January 13, 2005, plaintiff met with Gajewski to review her personnel file, including information that had not been available the previous day. Plaintiff told Gajewski that Hartford and Deluxe had handled her disability claim poorly and that Deluxe had never placed her on warning before that incident. Plaintiff did not see any disciplinary action forms in her file.

On January 18, 2005, plaintiff called the Deluxe Compliance Hotline. Plaintiff complained about the attendance incidents, the final warning, her meeting with Gajewski and Lauver on December 3, her meeting with Gajewski and White on January 12, and her obligation to pay insurance premiums. Plaintiff stated that she felt like upper management was harassing her and she did not understand why (1) she was being punished for attendance incidents that were not yet final or (2) three members of management were present when she reviewed her file. When Gajewski and White learned that plaintiff had called the Deluxe hotline, they were disappointed, but not angry or particularly upset.

Connie Harris, the HR Facility Manager in Salt Lake City, Utah, investigated plaintiff's hotline call. Harris spoke with Gajewski on January 26, and with plaintiff on January 31 and February 4. In talking with

5

Harris, plaintiff again complained about (1) her responsibility for insurance premiums and Gajewski's pressure for immediate payment; and (2) the attendance incidents. Harris told plaintiff that it was ultimately her decision whether to pay the premiums, but that if she chose not to do so, her insurance coverage for October 9 though November 28, 2004 would be cancelled. Harris promised to obtain specific information on re-payment of the premiums.

Harris contacted Kathy King in the Deluxe corporate benefits department. King told Harris that regardless of the outcome of plaintiff's appeal, plaintiff was responsible for the employee portion of premiums from October 9 through November 28, 2004 and that plaintiff needed to make arrangements to repay that portion by March 1, 2005 or plaintiff's insurance for that period would be cancelled. Harris stated that plaintiff need not pay Deluxe's portion of the premiums pending her appeal. On February 4, 2005, Harris relayed this information to plaintiff and confirmed that plaintiff would not be eligible for a merit increase or bonus payment until she was off warning status.

On February 7, 2005, Harris concluded that management had handled plaintiff's attendance incidents consistent with Deluxe policy, that management had timely provided plaintiff with information and that management was not harassing plaintiff. Harris did note that three management employees during plaintiff's file review were unnecessary, but also noted that Gajewski had spoken with White to inform him that he should handle such requests in the future.

On February 7, 2005, plaintiff appealed the denial of her claim with Hartford. She did not inform anyone at Deluxe that she had done so and Hartford did not communicate with Deluxe management on the issue until late March of 2005, when it ultimately granted plaintiff's appeal.

On March 3, 2005, Gajewski noted in plaintiff's file that over the prior month, plaintiff had failed to

6

respond when Gajewski greeted her at work. In addition, Gajewski noted that plaintiff had waved at her in an exaggerated, sarcastic manner earlier that day.

On March 8, 2005, plaintiff reviewed her 2004 annual evaluation with White. Under the category of Teamwork/Commitment, White rated the plaintiff as "meets expectations." As a result of this evaluation, plaintiff received a wage increase to $14.15 per hour. Because plaintiff was under a final warning, however, the wage increase was not effective immediately.

On March 10, 2005, White noted in plaintiff's file that as she was leaving for a doctor's appointment, plaintiff responded tersely to his question about her work experience.

By letter dated March 29, 2005, Hartford informed plaintiff that it had reversed its decision and approved plaintiff's claim for benefits through November 28, 2004. Hartford notified Gajewski of its decision by e-mail on March 31, 2005. Upon receiving this notification, Deluxe removed the seven attendance incidents from plaintiff's record, removed plaintiff from warning status and awarded plaintiff a retroactive pay increase to $14.15 per hour. King also provided plaintiff a summary of the amounts that she would owe for the employee portion of her insurance premiums from October 9 through November 28, 2004.

On March 31, 2005, Schwartz and Oshinski were sitting in Schwartz's office when they noticed plaintiff walk back and forth while speaking in a loud tone. Later, Schwartz and Oshinski were walking down the hall toward the atrium when plaintiff came up from behind them at a rapid pace. She bumped into Schwartz as she passed by, but did not offer an apology. Plaintiff then exhibited signs of elation, pumped her arms up and down, and stated words to the effect of, "What a great day!" and "Yes, yes, yes!" Schwartz and Oshinski watched as plaintiff skipped through the atrium with her arms extended in the air. When she reached the other side of the atrium, she jumped, turned around, and pointed her index fingers toward Schwartz and Oshinski.

7

Schwartz and Oshinski found plaintiff's behavior to be unusual, and met with her later that day to find out what was going on. Schwartz told plaintiff that they typically did not see employees demonstrate joy at work in that manner and asked her what was going on. Plaintiff initially refused to answer, then finally said, "You know." After Schwartz told plaintiff that they actually did not know, plaintiff stated that she was so happy because Hartford had approved her short-term disability claim. Schwartz and Oshinski, who did not know this fact, told plaintiff that they were happy for her. After plaintiff told Schwartz and Oshinski that Hartford had notified her by mail, Schwartz asked whether plaintiff had received the letter at work, perhaps explaining her outburst. Plaintiff responded, "I don't have to answer that. You never talk to me so why should I talk to you?" Schwartz asked plaintiff what she had meant by her hand gesture, but plaintiff said that she did not mean anything by it. When Schwartz asked plaintiff again about the hand gesture, she stated that she was "pleading the Fifth," and the discussion ended.

After leaving Schwartz's office, plaintiff told White that Hartford had granted her appeal and approved her claim through November 28, 2004. White, who did not know this fact, told plaintiff that he was pleased for her and that he would remove the attendance incidents from her record and ensure that she received a retroactive pay increase.

Shortly thereafter, Schwartz, Oshinski, White and Gajewski met to discuss plaintiff's behavior earlier that day. They did not discuss terminating plaintiff's employment, but they agreed that White and Gajewski would have a coaching session with plaintiff the following day. Based on plaintiff's conduct on March 31, as well as other behaviors that were inconsistent with the Deluxe Way Shared Values ("Deluxe Values"),[4] White

---

[4] Deluxe Values are a compilation of core values, beliefs and attitudes to which Deluxe expects
(continued...)

and Gajewski met with plaintiff the following day, April 1, 2005, to coach her on her behavior at work and, more specifically, her lack of openness and approachability and her unwillingness to treat co-workers and management personnel with respect and dignity.[5] They outlined to plaintiff those behaviors that were inappropriate according to the Deluxe Values, including statements like, "I plead the Fifth" and "you never give me the time of day, so why should I talk to you?" They also discussed her interaction with Schwartz and Oshinski the previous day and asked plaintiff how she felt the meeting with Schwartz and Oshinski had gone. Plaintiff stated that she would not respond. White and Gajewski gave plaintiff a coaching document titled, Documenting Discipline, which stated as follows:

> Today Katrina is receiving a formal coaching about her behavior at work. This is not a written warning. Recently, Katrina has displayed inappropriate behavior according to our Deluxe Way Shared Values. Specifically, there has been feedback from a co-worker, leadership in the facility and key personnel elsewhere within Deluxe that Katrina does not always display appropriate work etiquette. Specifically, the feedback has indicated that she can be difficult to approach, in conversations can be rude, and may not always respond when greeted. . . . As of this notice, she should demonstrate openness, respect and dignity towards all Deluxe employees. Further displays of such inappropriate behavior will lead to further disciplinary action, up to and including termination.[6]

White told plaintiff that her behavior could not continue because it was inconsistent with Deluxe Values. Plaintiff

---

[4](...continued)
its employees to adhere. The values include openness, trust and integrity; recognition and collaboration; respect and dignity; customer focus; partnering for the common goal; and innovation.

[5]     Throughout plaintiff's tenure, but escalating in January through March of 2005, plaintiff had difficulty getting along with co-workers and was generally considered unapproachable by team members and management alike.

[6]     On March 3, 2005, Gajewski noted that over the previous month, plaintiff had failed to respond when Gajewski had greeted her at work. Additionally, that morning while at a workstation outside of Gajewski's office, plaintiff turned and waved at Gajewski in an exaggerated, sarcastic fashion. Likewise, White noted that on at least two occasions in March of 2005, plaintiff responded tersely to his request or question.

9

told White that she did not feel that her behavior was wrong and refused to acknowledge a need to change. White and Gajewski told plaintiff that the purpose of the meeting was to give her a clear understanding of the need to change her behavior and asked her if she understood specifically which behaviors needed to be changed. Plaintiff repeated that she did not feel that her behavior needed correction. Plaintiff refused to sign the coaching document and left the room stating, "I'm done."

White and Gajewski discussed the meeting with Schwartz and determined that White and Gajewski should have another coaching session with plaintiff. Schwartz did not expect White and Gajewski to terminate plaintiff's employment in the coaching session. White and Gajewski concluded that if, after receiving several opportunities, plaintiff still refused to acknowledge what was asked of her and commit to changing her behavior, they would terminate her employment. White requested that plaintiff meet with him and Gajewski again that afternoon.

Shortly thereafter, Gajewski and White met with plaintiff a second time. White again discussed in detail the conduct which had led to coaching and explained why such conduct was inconsistent with Deluxe Values. White repeated Deluxe expectations for plaintiff's behavior with respect to openness, approachability, respect and dignity. White asked plaintiff whether she understood what was asked of her, but she did not respond. White proceeded to again review the coaching document with plaintiff and gave specific examples of plaintiff's behavior that did not meet Deluxe Values. White then asked plaintiff if she understood the coaching document and what was required of her. Plaintiff initially did not respond, but then asked, "Are you going to make my day today or what?"

White explained to plaintiff that her failure to respond to his question was insubordination and that her continued refusal to answer could lead to the termination of her employment. White proceeded to review the

10

coaching document with plaintiff a third time. When White asked plaintiff again whether she understood the document and what was asked of her, she did not respond. White told plaintiff that because of her insubordinate behavior, the situation had become unmanageable, she was no longer a good fit at Deluxe, and her employment was terminated.

Plaintiff got up from her seat, gestured as if to say "Yes," and exhibited elation. After plaintiff left the room, she danced around and skipped as White escorted her to gather her personal belongings. When plaintiff left the building, she told White goodbye and skipped through the parking lot.

On August 9, 2005, plaintiff filed a single claim of retaliation in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff seeks back pay, reinstatement or front pay, lost benefits and attorneys fees and costs.

## **Conclusions Of Law**

Plaintiff claims that Deluxe retaliated against her in violation of Section 510 of ERISA, which prohibits retaliation against an employee for exercising any right to which she is entitled under the provisions of an employee benefit plan. 29 U.S.C. § 1140 (prohibits discharge or other discriminatory acts against plan participant for exercising right under employee benefit plan). To prevail under Section 510, an employee must demonstrate that defendant had the specific intent to interfere with her ERISA rights. See Phelps v. Field Real Estate Co., 991 F.2d 645, 649 (10th Cir. 1993). The employee can satisfy her burden by relying on either direct or circumstantial proof of defendant's intent. See Cunningham v. Adams, 106 Fed. Appx. 693, 698 (10th Cir. Aug. 10, 2004) (citing Garratt v. Walker, 164 F.3d 1249, 1256 (10th Cir. 1998) (en banc)).

Plaintiff has not shown that when Deluxe terminated her employment on April 1, 2005, it was motivated by the specific intent to retaliate against her for appealing the denial of her claim for plan benefits or exercising

11

any other right under ERISA. See, e.g., Hopkins v. Seagate, 30 F.3d 104, 106 (10th Cir. 1994); Phelps, 991 F.2d at 649. Plaintiff relies on the following circumstantial evidence of defendant's intent to retaliate: (1) the close temporal proximity between her successful appeal to Hartford and her termination; (2) a pattern of adverse actions, which began shortly after plaintiff engaged in protected activity under ERISA, culminating in plaintiff's discharge; (3) prior treatment of plaintiff; and (4) Deluxe's violation of written policy regarding plaintiff's termination. Plaintiff also argues that the Court can infer retaliation because defendant's stated reason for terminating her employment, i.e. her insubordination during the coaching sessions on March 31 and April 1, 2005, is unworthy of credence.[7]

In plaintiff's proposed conclusions of law, plaintiff states that the specific right which she exercised under ERISA was the filing of her successful appeal with Hartford.[8] Plaintiff's Preliminary Proposed Findings

---

[7] Plaintiff argues that after a full trial on the merits, the burden-shifting framework under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), drops out and there remains only a single overarching issue whether defendant took adverse action against plaintiff because she engaged in protected activity. Plaintiff's Preliminary Proposed Findings Of Fact And Conclusions Of Law (Doc. #50) at 10 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000)). At trial, however, a plaintiff can meet her burden on the overarching issue of retaliation through the combination of a prima facie case and sufficient evidence to find that the employer's asserted reason for the adverse action is false. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). Although the burden-shifting framework and the presumption of discrimination "drops out of the picture" once defendant meets its burden of producing a legitimate non-retaliatory reason for the adverse action, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), the trier of fact may still consider the evidence establishing plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." Reeves, 530 U.S. at 142 (quoting Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).

[8] At trial, plaintiff suggested that the specific incident which triggered Deluxe's retaliatory conduct was her hotline call to Deluxe management on January 18, 2005, and that telephone call was protected activity under ERISA. See Closing Argument By Plaintiff's Counsel. Plaintiff has cited no authority to establish that a hotline call is protected activity under ERISA, and Deluxe did not provide the hotline as part of its ERISA plan. See supra text at 11 (plaintiff must show connection between adverse action and her exercise of right under ERISA).

12

Of Fact And Conclusions Of Law (Doc. #50) at 10-12.

## I.     Circumstantial Evidence Of Retaliation

Plaintiff argues that the close temporal proximity between the filing of her appeal with Hartford on February 7, 2005 and the termination of her employment on April 1, 2005 suggests that defendant retaliated against her because she appealed the denial of benefits. In addition, plaintiff relies on the temporal proximity between when she learned that Hartford had granted her appeal (March 31, 2005) and the termination of her employment (the following day). Despite the temporal proximity between these events, the record is clear that Deluxe did not terminate plaintiff's employment because she had appealed the denial of benefits or because she ultimately received benefits. In general, Deluxe HR and management employees attempted to assist plaintiff with her claims and her appeal to Hartford. Indeed, in June of 2004, White and Gajewski suggested that plaintiff apply for benefits and gave her instructions how to do so. During plaintiff's leave, Gajewski and Lauver communicated with plaintiff and Hartford on several occasions to help plaintiff manage her claim. After plaintiff returned to work, Gajewski and Lauver continued to follow up with plaintiff and Hartford to extend her claim through November 28. After Hartford denied plaintiff's claim for the extended period through November 28, Gajewski and White met with plaintiff to assist with her appeal. Deluxe personnel had no ill will toward plaintiff because she applied for benefits or appealed Hartford's decision to deny benefits for the extended period through November 28.

Plaintiff concedes that before her hotline call in January of 2005, White and Gajewski helped with her appeal to Hartford. Plaintiff claims that after the hotline call, White and Gajewski did nothing to help with her appeal. Even if the hotline call was protected activity under ERISA, neither White or Gajewski were particularly upset by the fact that plaintiff had called the hotline. In addition, plaintiff does not explain how

13

White and Gajewski could (or should) have helped with her appeal. Plaintiff did not seek additional help and she did not even advise White or Gajewski when she filed her appeal. In any event, Hartford (not Deluxe) was handling the appeal at that point. White and Gajewski had no motive to retaliate against plaintiff either for her hotline call or her appeal of the denial of benefits.

Plaintiff also argues that she suffered a pattern of adverse actions which began shortly after she engaged in protected activity under ERISA, suggesting that her discharge was in retaliation for her appeal. As explained above, plaintiff first engaged in protected activity in June of 2004 – some seven months before she claims to have suffered any adverse action. The Court does not find any pattern of adverse actions after plaintiff's appeal to Hartford in February of 2005. The alleged adverse actions (such as assessing plaintiff attendance incidents) occurred in December of 2004 and January of 2005. Deluxe assessed plaintiff attendance incidents under the absenteeism policy because Hartford notified Deluxe that it had denied plaintiff's claim for benefits through November 28, not because plaintiff later decided to appeal Hartford's decision or because plaintiff was contemplating such an appeal.

Plaintiff next argues that defendant's prior treatment of her suggests that defendant terminated her employment in April of 2005 because she filed an appeal with Hartford. Plaintiff's prior work history, without significant incident or discipline, is circumstantial evidence in support of this argument. At the same time, as explained above, Deluxe personnel had no ill will toward plaintiff because she applied for benefits or appealed Hartford's decision as to the extended period through November 28. In addition, defendant told plaintiff that she would accrue attendance incidents <u>before</u> she filed her appeal in February of 2005.

Finally, plaintiff argues that Deluxe acted contrary to written policy in terminating her employment. Deluxe written policy generally provides that an employee will be coached and receive a formal warning and

14

a final warning before termination. Here, Deluxe management determined that plaintiff was essentially refusing to be coached. Deluxe management gave plaintiff several chances to acknowledge that her behavior was inappropriate and to acknowledge what Deluxe was asking her to do, but plaintiff either did not respond or refused to acknowledge that her behavior was inappropriate. Deluxe written policy did not address this particular situation. On April 1, 2005, White explained to plaintiff that her failure to respond to his question was insubordination. White proceeded to review the coaching document with plaintiff a third time, but she did not respond to his questions. Deluxe could have given plaintiff a written warning at that point, but White had already determined that plaintiff's insubordinate behavior was unmanageable and that her employment should be terminated immediately. In light of plaintiff's continued refusal to answer questions and her baiting of Deluxe management to "make her day," Deluxe's failure to give plaintiff a written warning before terminating her employment does not suggest retaliation for her exercise of rights under ERISA.[9]

## II. Evidence Of Pretext

Plaintiff argues that defendant's stated reason, i.e. her alleged insubordination during the coaching sessions on March 31 and April 1, 2005, is unworthy of credence. The relevant issue is not whether the stated reasons for termination were wise, fair or correct but whether defendant honestly believed in those reasons and acted in good faith. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004). In examining this issue, a court must "look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick, 220 F.3d at 1231. The Court's role is not to second guess an employer's business judgment. Stover, 382

---

[9] No evidence suggests that Deluxe personnel or the company would benefit, financially or otherwise, if they terminated plaintiff's employment. See Lipe v. Mid-Central, Mfg., No. 05-1009-JTM, 2005 WL 3430421, at *5 (D. Kan. Dec. 8. 2005) (no basis for concluding that termination of plaintiffs' employment yielded or could be expected to yield any direct benefit to defendant).

F.3d at 1076.

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). While "[t]his burden is not onerous . . . it is also not empty or perfunctory." Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff. Kendrick, 220 F.3d at 1230. More specifically, evidence of pretext may include, but is not limited to, "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.), cert. denied, 528 U.S. 815 (1999).

Plaintiff has not offered evidence that would tend to prove that the decision to terminate her employment was connected with, much less motivated by, her appeal to Hartford. On the other hand, Deluxe has presented ample evidence supporting its legitimate non-retaliatory reason for plaintiff's termination, specifically, her insubordination toward management personnel on March 31 and April 1, 2005. Deluxe management demanded that plaintiff admit that her conduct was inappropriate and that she needed to change her behavior, and plaintiff refused to answer several of White's questions. This conduct, combined with plaintiff's sarcastic

question whether Gajewski and White were going to make her day, caused Deluxe to conclude that plaintiff's insubordination was unmanageable. It therefore terminated her employment. The decision to terminate plaintiff's employment might seem harsh because management effectively refused to continue the employment relationship unless she admitted that her conduct had been inappropriate. On the other hand, plaintiff refused to even discuss the issue in several instances during the coaching sessions, and plaintiff's conduct could be easily seen as an effort to goad Deluxe into terminating her employment (perhaps setting it up for a retaliatory discharge lawsuit). Plaintiff and Deluxe management reached an impasse which lasted more than one day, over three coaching sessions. In these circumstances, Deluxe could reasonably determine that plaintiff was insubordinate and that she would not be a productive employee in the future. The Court's only role is to determine whether the proffered reason for termination is a pretext for retaliation under ERISA. Absent such a showing by plaintiff, the Court will not second-guess Deluxe's lawful business decision. See, e.g., Winkel v. Kennecott Holdings Corp., 3 Fed. Appx. 697, 706 (10th Cir. 2001) (citing Simms, 165 F.3d at 1330 (court not super personnel department that second-guesses lawful employer business judgments)).

**IT IS THEREFORE ORDERED** that the Motion For Judgment As A Matter Of Law Of Defendant Deluxe Financial Services, Inc. (Doc. #59) filed September 15, 2006 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that plaintiff take nothing on her claim against defendant. The Clerk is directed to enter judgment in favor of defendant.

Dated this 23rd day of January, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

17